# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MECHELLE NICHOLSON, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : CIVIL ACTION NO. 1:19-cv-344-TFM-N |
| | : |
| RB2, LLC, d/b/a THE PURPLE COW CONVENIENCE STORE, | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Mechelle Nicholson's *Motion for Attorneys' Fees and Expenses*. Doc. 12, filed August 4, 2020. Plaintiff requests the Court award her attorney's fees, costs, and expenses in the amount of $26,912.62. *Id.* Having considered the motion, the evidence in support of the motion, and the relevant law, the Court finds the Motion for Attorneys' Fees and Expenses is due to be **GRANTED in part and DENIED in part**.

### I.   PROCEDURAL BACKGROUND

On July 20, 2020, the Court entered its Memorandum Opinion and Order for Plaintiff Mechelle Nicholson's ("Plaintiff") Motion for Default Judgment, which was granted in part and denied in part. Doc. 11. Plaintiff's Motion for Default Judgment was granted as to her claims for back pay, compensatory damages, and attorney's fees, costs, and expenses and denied as to her claim for punitive damages. *Id.* Plaintiff was ordered to file by August 4, 2020, a supplement to her Motion for Default Judgment that addresses her claim for attorney's fees, costs, and expenses. *Id.* In response to the Court's Memorandum Opinion and Order, Plaintiff filed her instant Motion for Attorney's Fees and Expenses, which is ripe for review based on the evidentiary material that

was filed in support of her motion. Doc. 12. Defendant RB2, LLC ("RB2"), did not file a response to the Motion for Attorney's Fees and Expenses.

## II.     DISCUSSION AND ANALYSIS

### A.     Attorney's Fees

Plaintiff requests attorney's fees in the amount of $25,850 for her counsel, Rocco Calamusa, Jr., and paralegal, Karen Allen, a fee which reflects 58.5 hours of work by Mr. Calamusa at an hourly rate of $425 and 7.9 hours of paralegal work by Ms. Allen at an hourly rate of $125. Doc. 12.

"The Supreme Court has explained that when a plaintiff succeeds in bringing a civil rights claim, '[s]he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority.'" *Barnes v. Zaccari*, 592 F. App'x 859, 869 (11th Cir. 2015).[1] A plaintiff who succeeds in bringing a civil rights claim may be considered a prevailing party for purposes of attorney's fees under 42 U.S.C. § 1988 if she "succeed[s] on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1935, 76 L. Ed. 2d 40 (1983) (citation omitted).

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e(17) provides a prevailing party may be allowed reasonable attorney's fee as part of the costs to pursue the action. 42 U.S.C. § 2000e-5(k). Since the attorney's fee provisions in § 1988 and § 2000e-5(k) are substantially similar, the Court will treat the standards applied to the award of attorney's fees the same. *Hensley*, 461 U.S. at 433 n.7, 103 S. Ct. at 1939.

---

[1] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenn A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010). "[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Watford v. Heckler*, 765 F.2d 1562, 1568 (11th Cir. 1985) (quoting *Hensley*, 461 U.S. at 433, 103 S. Ct. at 1939). "The first step in calculating a reasonable attorney's fee award is to determine the 'lodestar'—the product of multiplying reasonable hours expended times a reasonable hourly rate." *Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 713 (11th Cir. 2014) (citing *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)); *see also Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve.").

"In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)[2]." *Id.* "The *Johnson* factors include: (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Faught v. Am. Home*

---

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the Fifth Circuit that were decided prior to September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

*Shield Corp.,* 668 F.3d 1233, 1242-43 (11th Cir. 2011) (citations omitted). And, after determination of the lodestar, that "number" may then be "adjusted after considering other factors, such as the results obtained." *Martinez,* 579 F. App'x at 713 (citations omitted). Although the "*Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar-doing so amounts to double-counting." *Bivins,* 548 F.3d at 1352 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562-63, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992)).

In determining the proper lodestar in this case, the undersigned first considers how many hours were reasonably expended in pursuing this matter then what hourly rates are reasonable. In so doing, the Court keeps in mind that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437, 103 S. Ct. at 1941. Although Plaintiff's request for attorney fees is unopposed in this case, the Court is still obligated to scrutinize the reasonableness of the hours billed and claimed hourly rates by Plaintiff's counsel and paralegal.

1.    **Hours Reasonably Expended**

"'Fee applicants must exercise what the Supreme Court has termed 'billing judgment,' which requires the exclusion of excessive, redundant, or otherwise unnecessary hours." *Smith v. Werner Enters., Inc.*, Civ. Act. No. 14-0107-WS-B, 2015 U.S. Dist. LEXIS 153536, at *12, 2015 WL 7185503, at *4 (S.D. Ala. Nov. 13, 2015) (citations and internal quotation marks omitted). Indeed, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Barnes,* 168 F.3d at 428. "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees

and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* "Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." *Norman v. Hous. Auth. of the City of Montgomery,* 836 F.2d 1292, 1301 (11th Cir. 1988). "Moreover, because an assessment of the reasonableness of the hours requested (at least when objection is adequately raised by the defendant) contemplate[s] a task-by-task examination of the hours billed, plaintiffs' counsel is required to record each task, and the time associated with each, with sufficient clarity that the Court can evaluate the reasonableness of the expenditure of time." *Smith*, 2015 U.S. Dist. LEXIS 153536, at *12, 2015 WL 7185503, at *4 (citations and internal quotation marks omitted).

      a.    **Mr. Calamusa's Hours**

Plaintiff claims Mr. Calamusa expended 58.5 hours of work for this matter. Doc. 12-1 at 4.

First, it appears, in some instances, Mr. Calamusa's tasks are blocked together. "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 193, 203 (11th Cir. 2012). Block billing "makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task." *Barnes*, 168 F.3d at 429. "Courts have . . . approved across-the-board reductions in block-billed hours to offset the effects of block billing." *Ceres*, 476 F. App'x at 203. Such instances of block billing occurred on entries for September 23, 2019; October 18, 2019; October 21, 2019; October 22, 2019; June 30, 2020; July 1, 2020; July 6, 2020; July 7, 2020; July 8, 2020; July 9,

2020; July 21, 2020; and July 29, 2020, which represent 47.8 hours of claimed time. Doc. 12-1 at 18-19. The Court finds an across-the-board reduction by ten percent (10%) is sufficient to offset the effects of the block billing, so Mr. Calamusa's claimed time will be reduced by 4.8 hours.

Second, the Court finds, in some instances, Mr. Calamusa's tasks are not adequately described. "[T]he general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. "In addition to a reduction for block billing, a time entry may be further discounted where the description of the work performed is overly vague." *Bujanowski v. Kocontes*, Civ. Act. No. 8:08-cv-0390-T-33EAJ, 2009 U.S. Dist. LEXIS 50659, at *5, 2009 WL 1564263, at *2 (M.D. Fla. 2009) (citation omitted). The description of the work that Mr. Calamusa performed on October 22, 2019 ("research") is overly vague, which represents 4.5 hours of claimed time. Doc. 12-1 at 18-19. The Court finds an across-the-board reduction by ten percent (10%) is sufficient to offset the effects of an overly vague description of performed work, so Mr. Calamusa's claimed time will be reduced by 0.45 hours.

Accordingly, the Court finds 53.25 hours of work by Mr. Calamusa is reasonable.

      **b.**      **Ms. Allen's Hours**

Plaintiff claims Ms. Allen expended 7.9 hours of work for this matter. Doc. 12-1 at 4. "A court may award fees for the work of non-lawyer paralegals and non-lawyer law clerks, but only to the extent they perform work 'traditionally done by an attorney.'" *Kent v. Gulf Coast Sec. Enters. LLC*, Civ. Act. No. 18-00106-CG-C, 2018 U.S. Dist. LEXIS 208769, at *7, 2018 WL 6933393, at *3 (S.D. Ala. Dec. 10, 2018) (citations omitted). "Work that may appropriately be performed by paralegals and billed to a client or a losing party includes 'factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and

document production; compilation of statistical and financial date; checking legal citations; and drafting correspondence.'" *Allen v. McClain EZ Pack of Ala., Inc.*, Civ. Act. No. 03-0490-WS-M, 2005 U.S. Dist. LEXIS 43487, at *9, 2005 WL 1926636, at *3 (S.D. Ala. Aug. 8, 2005) (quoting *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 2471, 105 L. Ed. 2d 229 (1989)). The Court's review finds Mr. Allen's claimed hours are appropriately billed as paralegal work and are reasonable.

### 2. Reasonable Hourly Rates

> "The Eleventh Circuit has instructed that a reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.'" *McDonald* [*v. ST Aerospace Mobile, Inc.,* Civ. Act. No. 12-0313-CG-C], 2013 WL 1389976, [at] *3 [(S.D. Ala. April 4, 2013)] (citing *Norman,* 836 F.2d at 1303). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" [ ]*Barnes,* 168 F.3d [ ] at 437 (citing *Cullens v. Ga. Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994)[)]. However, "[i]f the fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing to handle his claims." *Barnes*, 168 F.3d at 437. The fee applicant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman,* 836 F.2d at 1299. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman,* 836 F.2d at 1299.

*Cormier v. ACAC Inc.*, Civ. Act. No. 13-0158-CG-M, 2013 U.S. Dist. LEXIS 173659, at * 2, 2013 WL 6499703, at *2 (S.D. Ala. Dec. 11, 2013). "Also, the court is familiar with the prevailing rates in this district and may rely upon its own 'knowledge and experience' to form an 'independent judgment' as to a reasonable hourly rate." *Garrett Invs., LLC v. SE Prop. Holdings, LLC*, 956 F. Supp. 2d 1330, 1339 (S.D. Ala. 2013) (citing *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). However, "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11h Cir. 2000).

### a. Mr. Calamusa's Hourly Rate

Plaintiff requests an hourly rate of $425 for Mr. Calamusa. Doc. 12-1 at 5. Mr. Calamusa provides many arguments, which reflect the *Johnson* factors, to support his claimed hourly rate: (1) his hourly rate is similar to the rate that he and others in his firm with comparable experience have been previously awarded; (2) his hourly rate is based on skill and experience in litigation and appellate practice, the economic forces of competition in the market place, the amount of expense and financial burden of undertaking the case, the nature and length of the professional relationship with the client, the prospect, amount and potential profitability of future employment by the client, the desirability of litigation and representation of the type involved, the preclusion of other employment due to the acceptance of the case, the time limitations typical of the circumstances involved in the case, the amount of time required by the representation and the hourly rate necessary to attract attorneys to accept the offer of employment and to undertake the representation; (3) his hourly rate is commensurate with the prevailing range of rates charged by attorneys in similar circumstances and with comparable skill and responsibility in similar areas of litigation in Alabama as well as in the national legal market; (4) his hourly rate is similar to the rate he charges hourly, non-contingent clients; (5) the acceptance of clients with employment discrimination claims has a negative effect on the financial health of a law firm because the delay in payment of fees in successful cases and the non-payment of fees in unsuccessful cases is a necessary and inherent part of representation for all firms that accept such cases; (6) the representations of plaintiffs in the employment discrimination field leads to conflicts of interests that prevent plaintiffs' attorneys from representing corporate defendants and the requirement that fee requests be reviewed by your opponent and approve by the Court is undesirable; (7) the Southern District of Alabama has historically been a difficult place for plaintiffs to succeed on

discrimination claims; (8) he represents Plaintiff on a contingency basis; (9) there are very few attorneys who specialize in employment discrimination in the Southern District of Alabama; (10) it is inconvenient for him to take cases in the Southern District of Alabama, but he believes it is important that discrimination plaintiff in Alabama be able to obtain representation; (11) he represented Plaintiff in this matter for two years and the representation is not expected to produce regular or future employment by Plaintiff; and (12) discrimination cases require an exertion of effort and skill greater and different than that required in the more routine provision of legal services. *Id.* at 5-14.

In support of Mr. Calamusa's claimed hourly rate, he submitted the affidavit of Charles Guerrier. Doc. 12-2. Mr. Guerrier states he has practiced law since 1972; he is admitted to practice in the States of Alabama and Ohio; the Supreme Court of the United States; the United States Courts of Appeals for the Second, Third, Fifth, Sixth, and Eleventh Circuits; has appeared on behalf of clients in the United States District Courts for the Northern, Middle, and Southern Districts of Alabama, the Northern District of California, the District of Connecticut, the District Court for the District of Columbia, the Northern and Middle Districts of Georgia, the Western District of Louisiana, the District of Maryland, the District of Minnesota, the Northern and Southern Districts of Mississippi, the Northern and Southern Districts of Ohio, the Western District of Pennsylvania, the Western District of Washington, the Southern District of West Virginia, and the Western District of Wisconsin; and the entirety of his practice has been to seek and secure equal treatment under the Constitution and laws of the United States for individuals and organizations. *Id.* Mr. Guerrier's practice has included work as a Research Assistant in the Sex Discrimination Clinic at the Cleveland State University College of Law; a Trial Attorney with the Women's Law Fund, Inc.; as Executive director of the Women's Law Fund, Inc.; a member of the

President's Advisory Committee for Women during President Jimmy Carter's administration; a member of multiple commissions, committees, and associations; a member of the National Employment Lawyers Association ("NELA"), also as a secretary/treasurer and president of the Alabama Chapter of NELA ("NELA-Alabama"); a member of the Labor and Employment Law Section of the Alabama Bar; a Trial Attorney, Senior Trial Attorney, Senior Lead Trial Attorney, and Regional Attorney for the U.S. Equal Employment Opportunity Commission ("EEOC"); Adjunct Professor of Law at Case Western Reserve University School of Law; and as "Of Counsel" with the law firm of Haynes and Haynes. *Id.* at 3-10. Mr. Guerrier has also published various legal books and articles. *Id.* at 9.

Mr. Guerrier argues the relevant legal community that should be used to determine a reasonable hourly rate is the entire state of Alabama because the number of plaintiff attorneys who specialize in employment law in the Southern District of Alabama is scarce. *Id.* at 11-12. Mr. Guerrier states his past positions as president and secretary/treasurer of NELA-Alabama gives him insight into the legal market for plaintiff's attorneys who specialize in employment law in the State of Alabama and explains there are only three members who routinely represent plaintiffs in employment discrimination matters in the Southern District of Alabama, and none exclusively do so. *Id.* at 10. Further, Mr. Guerrier states, as the president of NELA-Alabama, he would frequently receive communications from employees in the Southern District of Alabama who could not find an attorney in Mobile to represent their discrimination claims, and as Regional Attorney for the Birmingham District Office of the EEOC, the list of lawyers, who were willing to assist individuals file charges with the EEOC and were located in the Southern District of Alabama, that he maintained never contained more than five attorneys. *Id.* at 11. Based on this scarcity of plaintiff attorneys who specialize in employment law in the Southern District of Alabama, Mr. Guerrier

states it is his opinion that the current market rate for such skilled attorneys ranges from $200 to $600 per hour, based on the level of skill and experience of the attorney, and based on his knowledge of Mr. Calamusa, the hourly rate of $425 is reasonable. *Id.* at 12.

Mr. Calamusa has practiced law since 1993; has been a partner/member with his firm since 2000; is admitted to practice in the State of Alabama, the United States District Courts for the Northern, Middle, and Southern Districts of Alabama, and the United States Court of Appeals for the Fifth and Eleventh Circuits; has represented clients in courts in Georgia, Florida, Indiana, Illinois, Kentucky, Louisiana, Missouri, North Carolina, Tennessee, and Virginia; and a majority of his practice has been in the fields of discrimination, wage and hour, and civil rights. Doc. 12-1 at 1-2.

Mr. Calamusa's claimed hourly rate is higher than the prevailing rates in the local market of Mobile, Alabama, that are charged by attorneys with similar experience and skill. *See Stevens v. Mobile Cty. Bd. of Sch. Comm'rs*, Civ. Act. No. 1:18-cv-350-KD-B, 2020 U.S. Dist. LEXIS 68831, at *16-17, 2020 WL 1921557, at *6 (S.D. Ala. Apr. 20, 2020) (awarding attorney with approximately thirty-five years of experience an hourly rate of $350); *Galbreath v. Hale County, Ala. Comm'n*, Civ. Act. No. 15-308-CG-N, 2017 U.S. Dist. LEXIS 132019, at *12-13, 2017 WL 3584920, at *5 (S.D. Ala. Aug. 17, 2017) (awarding attorney with little civil rights experience and twenty years of experience an hourly rate of $300); *Langford v. Hale Cty. Ala. Comm'n*, Civ. Act. No. 2:14-00070-KD-M, 2016 U.S. Dist. LEXIS 126295, at *14, 2016 WL 4976859, at *5 (S.D. Ala. Sept. 16, 2016) (awarding the same attorney from *Galbreath* an hourly rate of $275); *Weaver v. Stringer*, Civ. Act. No. 1:18-00052-N, 2019 U.S. Dist. LEXIS 58220, at *11 n.8, 2019 WL 1495279, at *5 n.8 (S.D. Ala. 2019) (awarding attorney with thirty-eight years of experience an hourly rate of $350 in a discovery dispute); *Brown v. Lambert's Café III*, Civ. Act. No. 15-0029-

CG-C, 2016 U.S. Dist. LEXIS 9194, at *8, 2016 WL 325131, at *2 (S.D. Ala. 2016) (awarding attorney with thirty-two years of experience an hourly rate of $325); *Adams v. Austal, U.S.A., L.L.C.*, Civ. Act. No. 08-0155-KD-N, 2010 U.S. Dist. LEXIS 59811, at *22, 2010 WL 2496396, at *6 (S.D. Ala. June 16, 2010) (awarding Mr. Calamusa an hourly rate of $250 for a discovery dispute).

While Plaintiff, through Mr. Guerrier's affidavit, attempts to show a lack of attorneys who practice in the Southern District of Alabama and are willing to handle her employment discrimination claims, Mr. Guerrier's affidavit only speaks of a limited number of such attorneys, but neither he, Mr. Calamusa, nor Plaintiff have shown those attorneys were not willing to handle her claims. *See Barnes*, 168 F.3d at 437 ("If the fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing to handle his claims."). Therefore, the Court declines to allow Mr. Calamusa to recover non-local rates in this matter.

With all of the above in mind and in consideration of the *Johnson* factors, the Court finds an hourly rate of $325 to be reasonable for Mr. Calamusa.

### a. Ms. Allen's Hourly Rate

Plaintiff requests an hourly rate of $125 for Ms. Allen. Doc. 12-1 at 5. Ms. Allen obtained her juris doctor in 1999, has more than twenty years of experience as a paralegal, and has worked on individual and complex employment, Fair Labor Standards Act, and civil rights litigation, which include class and collective actions. *Id.* "Absent a showing that a paralegal possesses some extraordinary qualification or expertise, the lodestar hourly rate of $75 is routinely awarded in this district." *Cormier*, 2013 U.S. Dist. LEXIS 173659, at *9-10, 2013 WL 6499703, at *3 (citations and internal quotation marks omitted). However, in consideration of Ms. Allen's extensive

credentials, including a juris doctor, and her experience, the Court finds reasonable an hourly rate of $125.

### 3. Lodestar Calculation

|  | Adjusted Hourly Rate | Hours | Amount |
|---|---|---|---|
| Mr. Calamusa | $325.00 | 53.25 | $17,306.25 |
| Ms. Allen | $125.00 | 7.9 | $987.50 |
| **Total** |  |  | **$18,293.75.** |

After making the appropriate adjustments to the reasonable hourly rates and the hours that were reasonably expended for Mr. Calamusa and Ms. Allen, the Court finds the lodestar is $18,293.75.

### 4. Adjustments to the Lodestar

While the Supreme Court has made clear that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry[,]" *Hensley,* 461 U.S. at 434, 103 S. Ct. at 1940, this Court does bear in mind that "there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins,* 548 F.3d at 1350 (citations and quotations omitted). "When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." *Id.* at 1350-51 (citation omitted). Here, Plaintiff's Motion for Default Judgment was granted as to her claims for back pay, compensatory damages, and attorney's fees, costs, and expenses and denied as to her claim for punitive damages, which does not mitigate the success of Plaintiff's efforts. Therefore, a downward adjustment to the lodestar is not warranted.

**B.   Costs**

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these

rules, or a court order provides otherwise, costs…should be allowed to the prevailing party." "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) (noting out-of-pocket expenses under §1988 and Title VII are more liberal than § 1920 costs). To determine which expenses may properly be included, the court must look to "the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Id*. When reviewing costs and expenses "the standard for reasonableness is to be given a liberal interpretation." *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987). "The Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research." *Langford*, 2016 U.S. Dist. LEXIS 126295, at *36, 2016 WL 4976859, at *11 (citations and internal quotation marks omitted). "[F]ee applicants bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs." *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1275 (S.D. Ala. 2013) (quoting *Andrade v. Aerotek, Inc.*, 852 F. Supp.2d 637, 645 (D. Md. 2012)).

Plaintiff states her counsel's expenses and costs are comprised of copy costs, filing fees, postage, research cost, and travel expenses, all of which were necessary to pursue this matter and obtain the awarded outcome. Doc. 12-1 at 14. Plaintiff's "Expense Itemization" totals $1,062.62 and details costs for copying, scanning, postage, courier runs, filing fees, legal research, and travel. *Id.* at 21. The Court has identified certain categories of expenses that should be reduced: copying

scanning costs.[3]

### 1. Copying Costs

Plaintiff requests her costs of copying be assessed against RB2. *Id.* at 14. Plaintiff's "Expense Itemization" includes seventy-seven copies at a rate of $0.20 per copy. *Id.* at 21. The "Expense Itemization" does not provide a description beyond the word "Copy" for each copy charge. *Id.*

> In determining whether to award copying costs, "the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." [*U.S. EEOC v.*] *W&O Inc.*, 213 F.3d [300,] 623 [(11th Cir. 2000)]. It is not necessary that the photocopies be used at trial or be filed with the court to be taxable. *Id.* Charges for photocopies made merely for the convenience of counsel or the parties, however, are not taxable. *Blevins v. Heilig-Meyers Corp.*, 184 F.R.D. 663, 668 (M.D. Ala. 1999).

*Galbreath*, 2017 U.S. Dist. LEXIS 132019, at *37, 2017 WL 3584920, at *12.

Since the Court is not able to determine whether the copies were necessary the Court will not assess Plaintiff's copying costs against RB2.[4]

### 2. Scanning Costs

Plaintiff requests her costs of scanning be assessed against RB2. Doc. 12-1 at 14. Plaintiff's "Expense Itemization" includes 144 scans at a rate of $0.10 per scan. *Id.* at 21. The "Expense Itemization" does not provide a description beyond the word "Scan" for each scan charge. *Id.*

Costs for scanning are recoverable. *Brown Jordan Int'l, Inc. v. Carmicle*, Civ. Act. No.

---

[3] While the Court finds Plaintiff's hotel expenses for her counsel are reasonable based on a one-night stay, other requests to be reimbursed for such expenses may require additional documentation, such as an invoice from the hotel.

[4] Further, "copy cost awards within this district show that the local rate is more reasonable $0.10 per page." *Galbreath*, 2017 U.S. Dist. LEXIS 132019, at *38, 2017 WL 3584920, at *13.

14-60629-CV-Rosenberg/Hopkins, 2017 U.S. Dist. LEXIS 125250, at *28, 2017 WL 5633312, at *10 (S.D. Fla. Aug. 7, 2017) (citations omitted).  However, in the same way the Court is not able to determine the necessity of Plaintiff's copy costs, the Court is not able to determine whether the scans were necessary and will not assess Plaintiff's scanning costs against RB2.  *See Galbreath*, 2017 U.S. Dist. LEXIS 132019, at *37, 2017 WL 3584920, at *12 (stating the court should consider whether the prevailing party could have reasonably believed it was necessary to copy the papers at issue in determining whether to award copying costs).

## V.    CONCLUSION

Accordingly, Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 12) is **GRANTED in part and DENIED in part**.  The motion is **GRANTED** insofar as Plaintiff is awarded attorney's fees in the amount of **$18,293.75**, and costs and expenses in the amount of **$1,034.32**, for a total of **$19,328.07**.  The motion is **DENIED** to the extent Plaintiff seeks additional recovery.

**DONE** and **ORDERED** this the 9th day of March 2021.

       s/Terry F. Moorer  
       **TERRY F. MOORER**  
       **UNITED STATES DISTRICT JUDGE**